USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/24/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                              :

CYNTHIA RAMSARAN,                   :
                                            :

                    Plaintiff,    :
                                            :          1:14-cv-708-GHW
                   -v-                     :
                                            :          MEMORANDUM OPINION
BOOZ & COMPANY (N.A.) INC. and ART   :             AND ORDER
KLEINER,                                 :

                   Defendants.  :

------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

Ms. Ramsaran worked as an editor for defendant Booz & Company (N.A.) Inc. Mr. Kleiner was her supervisor. After a series of documented negative reviews regarding her job performance, Ms. Ramsaran was fired. At the time that she was terminated, Ms. Ramsaran was pregnant, and away from the office for bed rest. Consequently, Ms. Ramsaran claims that she was discriminated against on the basis of her pregnancy. In support of that claim, Ms. Ramsaran relies principally on the fact that the termination took place after the defendants became aware that she was pregnant, and that she "felt discriminated against when she was terminated." Because these are insufficient grounds to establish that her employer's well-documented justification for her termination was pretext for discrimination, defendants' motion for summary judgment is GRANTED.

I. **BACKGROUND**

   a. **Procedural History**

Plaintiff filed this case on February 4, 2014, alleging that defendants Booz & Company (N.A.) Inc., her former employer, and Art Kleiner, her former supervisor at Booz, discriminated against her by terminating her employment while she was pregnant. *See* Complaint, Dkt. No. 1. Plaintiff sought redress under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k); the Family Medical Leave Act of 1978, 29 U.S.C. §§ 2612 and 2615(a); and the Americans with Disabilities Act, 42 U.S.C. §§ 12111 and 12112. She also invoked the Court's supplemental jurisdiction over her analogous claims under the applicable New York State and New York City anti-discrimination laws. In accordance with the exhaustion procedures required by Title VII, she properly filed her complaint within 90 days of receiving a "Right to Sue" letter on December 9, 2013, in response to a complaint she filed with the Equal Opportunity Employment Commission. *See* 42 U.S.C. § 2000e-5(e)(1).

Defendants filed a motion seeking summary judgment in their favor on all of plaintiff's claims. Dkt. No. 20-23. In her opposition papers, plaintiff agreed to withdraw her claims under the Americans with Disabilities Act and Family and Medical Leave Act, as well as her claims for retaliation under Title VII. *See* Dkt. No. 28.

   b. **Facts[1]**

Defendant Booz is a management consulting firm that provides strategic guidance and advice to clients in a number of fields—technology, financial services, and healthcare, among others. Defendant Mr. Kleiner is Editor in Chief and overall supervisor of Booz's

---

[1] Unless otherwise specified, facts are taken from the parties' Local Rule 56.1 Statements of Undisputed Facts, Dkt. Nos. 23, 27, 33, and the evidence submitted in connection with this motion.

Editorial/Strategy+Business Team, where plaintiff worked as an Associate Editor from April 3, 2012 through the date of her termination on February 1, 2013.

Sometime during the summer of 2012, Mr. Kleiner became concerned about the quality of plaintiff's work, and scheduled the first in a series of one-on-one editing sessions with plaintiff to work on her skills.[2]  Plaintiff was aware that these sessions were designed to "polish" her editing skills.  *See* Plaintiff's September 6, 2013 Email, Dkt. No. 21-11.

In September 2012, Mr. Kleiner began the process of completing what Booz calls a "Pulse Check" review for plaintiff.  Pulse Check reviews typically occur within the first six months of an employee's tenure at Booz.[3]  According to Booz, and undisputed by plaintiff, the purpose of this review is to give employees early feedback on their progress, as all Booz employees "are expected to succeed and produce from the start of their employment in Booz's fast-paced and high-performance environment."  Statement of Undisputed Facts ("SUF"), Dkt. No. 33, at ¶ 17.  During the review process, an employee's manager interviews her colleagues to gather feedback on her performance, then prepares a written review using Booz's assessment form, which the manager then shares with the employee.

On October 12, 2012, Mr. Kleiner shared plaintiff's completed Pulse Check review form with her.  The review lists plaintiff's strengths and weaknesses in various areas, and includes a "Current Competency Rating Summary," in which Mr. Kleiner rated plaintiff's skills in five categories[4] on a scale of "Does Not Meet," "Partially Meets," "Meets," or "Exceeds."  *See* Pulse

---

[2] Plaintiff disputes that Mr. Kleiner had sufficient personal knowledge of plaintiff's editing skills before he scheduled the sessions to competently testify as to the purpose of these one-on-one sessions.  However, as discussed in more detail below, Mr. Kleiner is competent to testify about *his* motivations in scheduling those sessions, regardless of the truth or accuracy of the information he relied on in forming those motivations.  In short, the strength of plaintiff's editing skills is not the issue—it is Mr. Kleiner's perception of her editing skills that is relevant to plaintiff's discrimination claims.
[3] The parties dispute whether a Pulse Check is optional or mandatory for Booz employees, but it is not necessary to resolve that issue to decide the current motion.  For purposes of this motion, the Court accepts, as plaintiff asserts, that a Pulse Check review is mandatory for all employees.
[4] The assessment form includes seven assessment categories, but two—Leadership and People Development—are marked "N/A."

Check Review, Dkt. No. 21-17, at p. 3.  Plaintiff received a rating of "Meets" in one category, "Partially Meets" in two categories, and "Does Not Meet" in two other categories.  *See id.*  She was given an "Overall Competency Rating" of "Partially Meets."  *See id.*

Under the section marked "Recommended Outcome," Mr. Kleiner checked off "Notable Development Agenda."  *See id.*  According to Booz, "an employee who receives a 'Notable Development Agenda' needs to show immediate and continual progress and improvement in her performance following the evaluation."  SUF at ¶ 32.  Plaintiff claims that she was not aware of the significance of being issued a "Notable Development Agenda," and that Mr. Kleiner did not explain it to her.  As plaintiff points out, Mr. Kleiner had the option of giving plaintiff a "Warning" rather than a "Notable Development Agenda," but he chose not to do so.  *See* Pulse Check Review at p. 3.

Following plaintiff's Pulse Check review, Mr. Kleiner sent her an email in which he said:

> I can't emphasize how important it is, during the next two months, for
> you to raise your game on the line-editing level.  If you want time with
> me, or with anyone else, to help do this, please ask. In the meantime,
> I'm going to ask everything you do to be checked by either me or Laura
> during this two-month period.

Kleiner's October 21, 2012 Email, Dkt. No. 21-18.  Plaintiff does not dispute that she received this email or question its authenticity.  She does note that Mr. Kleiner did not specify in this email that her job was in jeopardy.

Plaintiff's Pulse Check form indicates that her next review was scheduled for January 2013. *See* Pulse Check Review at p. 3.  The review scheduled for January was plaintiff's "Annual Appraisal," a review Booz completes annually for each employee.

On December 21, 2012, plaintiff notified Mr. Kleiner that she was pregnant.  He, in turn, notified others on the team about her pregnancy, and in response, plaintiff received emails from team members congratulating her and wishing her well.  *See* Pregnancy News Emails, Dkt. No. 21-26.

4

On January 4, 2013, plaintiff contacted Lilly Becker, Booz's Senior Manager of Human Resources, notifying Ms. Becker that she had shared her pregnancy news with her team and that her doctor had recommended bed rest because of some complications from pregnancy.  In response, Ms. Becker suggested that plaintiff might want to look into taking short-term disability leave.  Short-term disability leave at Booz is handled by CIGNA, Booz's insurance carrier.  Employees must apply directly to CIGNA if they wish to take leave.

On January 9, 2013, plaintiff emailed Mr. Kleiner her self-evaluation form, a preliminary step in the Annual Appraisal process.  Mr. Kleiner had recently learned from plaintiff that she was pregnant, so upon receiving her self-evaluation, he contacted Ms. Becker in Human Resources to ask whether he should move forward with the review as planned, given plaintiff's pregnancy and related complications.  Ms. Becker confirmed that he should move forward.

On January 14, 2013, plaintiff told Ms. Becker that she wanted to apply for short-term disability leave, and Ms. Becker directed her to contact CIGNA to start the process.  Plaintiff's leave was approved by CIGNA and she was originally scheduled to be out on leave until January 31, 2013.

Like the Pulse Check review process, Booz's Annual Appraisal process requires an employee's manager to interview the employee's colleagues in order to gather feedback on her performance, then prepare a written review in Booz's assessment form, which the manager shares with the employee once it is complete.  Plaintiff disputes the timeline within which Mr. Kleiner conducted the interviews for her Annual Appraisal; for the purposes of this motion, the Court accepts that they were all conducted in January, after Mr. Kleiner learned of plaintiff's pregnancy. Mr. Kleiner completed his interviews on January 22, 2013, and determined, based on the results of those interviews, that plaintiff should be terminated.  He made that determination based on her colleague's reports of plaintiff's poor performance and his assessment that plaintiff had not demonstrated sufficient improvement since her Pulse Check review.

After Mr. Kleiner informed Ms. Becker of his decision, she suggested, as a matter of good form, that they wait until plaintiff's return from short-term disability leave to notify her in person. At that point, plaintiff was expected to return on February 1, 2013. On January 30, 2013, plaintiff notified Mr. Kleiner and Ms. Becker that her doctor had determined she should remain on bed rest, therefore she would be out on disability leave longer than originally anticipated and would not return to work on February 1. Because her return to the office was deferred, Mr. Kleiner and Ms. Becker spoke to plaintiff on the phone to deliver the news of her termination. After the call, she received a copy of the Annual Appraisal form by email.

Like her Pulse Check form, plaintiff's Annual Appraisal form listed plaintiff's strengths and weaknesses in various areas. *See* Annual Appraisal Review, Dkt. No. 21-39. Under the "Current Competency Rating Summary," Mr. Kleiner reviewed plaintiff's skills in six categories[5] on a scale of "Does Not Meet," "Partially Meets," "Meets," or "Exceeds." *See id.* Plaintiff received a rating of "Meets" in one category, "Partially Meets" in two categories, and "Does Not Meet" in three other categories, including the Leadership category, on which she was not assessed in her Pulse Check review. *See id.* She received an "Overall Competency Rating" of "Does Not Meet." *See id.* According to defendants, "[i]t is rare for a Booz employee to not meet expectations with regard to functional skills in two evaluations; such failings demonstrate that Plaintiff could not suffice in her own area of expertise, and so her skill set was not well-suited to the position." SUF at ¶ 66. Plaintiff disputes this characterization, not because it is inaccurate as to her performance, but, instead, only because Booz does not offer specific examples of other employees. *Id.*

After speaking with Mr. Kleiner about her termination, plaintiff followed up with Ms. Becker regarding the logistics of her termination. Booz ultimately allowed plaintiff to remain on short-term disability leave through the birth of her child, and allowed her eight weeks of paid post-

---

[5] The assessment form includes seven assessment categories, but one—People Development—is marked "N/A."

6

partum leave with continued medical benefits. Booz also offered plaintiff additional benefits if she would sign a general release, which plaintiff refused to do. Plaintiff disputes the issue of whether offering such a release to departing employees is a standard practice at Booz.

During the time plaintiff was employed at Booz, three other women on her team were also pregnant, and a fourth team member had been pregnant prior to plaintiff's employment. Those four women all took leave in connection with their pregnancies and returned to work at Booz thereafter. None of those other women, however, took short-term disability leave during their pregnancy, as plaintiff did.

## II. LEGAL STANDARDS

### a. Summary Judgment Standard

Defendants are entitled to summary judgment on a claim if they can "show[ ] that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

To defeat a motion for summary judgment, plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010)

(citations and internal quotations omitted).  Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586.

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003)).  The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).  Rather, the Court must decide whether a rational juror could find in favor of the plaintiff.  *Id.*

Although the Second Circuit has noted that "an extra measure of caution" may be required in discrimination cases "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence," the Circuit has made it clear that "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001).

### b.  The *McDonnell-Douglas* Burden Shifting Test

Title VII makes it an "unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2.  The Pregnancy Employment Act of 1978, 42 U.S.C. § 2000e(k), "specifies that sex discrimination includes discrimination on the basis of pregnancy." *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 277 (1987).

Courts analyze Title VII discrimination claims under a burden-shifting framework first outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under that framework:

> [P]laintiff first must establish a *prima facie* case of discrimination based on [a protected status].  If he does so, the burden shifts to the employer

8

> to articulate a legitimate, non-discriminatory reason for the employee's dismissal. If such a reason is proffered, the burden shifts back to the plaintiff to prove that discrimination was the real reason for the employment action.

*Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000) (internal citations omitted).

To make out a *prima facie* case of discrimination, plaintiff must show that: (1) she belongs to a protected group; (2) she was qualified for her position; (3) her employer took an adverse action against her; and (4) the adverse action occurred in circumstances giving rise to an inference of discrimination. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014); *see also Graham*, 230 F.3d at 38 (describing that in the context of alleged discriminatory discharge, the second prong requires plaintiff to show she was "performing her duties satisfactorily"). A plaintiff's burden at the *prima facie* stage is "minimal" and "requires no evidence of discrimination." *James v. New York Racing Ass'n*, 233 F.3d 149, 153 (2d Cir. 2000).

"Under the *McDonnell Douglas* scheme, establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). The employer must then "'produc[e] evidence' that the adverse employment action[ ] w[as] taken 'for a legitimate, nondiscriminatory reason.'" *Id.* at 507 (quoting *Burdine*, 450 U.S. at 254). But "although the *McDonnell Douglas* presumption shifts the burden of *production* to the defendant, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* (quoting *Burdine*, 450 U.S. at 253).

If the employer satisfies its burden of production and produces evidence of a legitimate, non-discriminatory reason for the employee's dismissal, "the presumption [of discrimination] completely 'drops out of the picture.'" *James*, 233 F.3d at 154 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 511). At that point, "the employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *Id.* The

Second Circuit described the plaintiff's burden at this third stage of the *McDonnell Douglas* framework as follows:

> The plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action. In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination. To get to the jury, it is not enough to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination.

*Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000), *superseded by statute on other grounds* (internal citations and alterations omitted).

### III.   ANALYSIS

#### a.   *McDonnell Douglas* Steps One and Two

The Court assumes without deciding that plaintiff has made out a *prima facie* case under *McDonnell Douglas*, thus shifting the burden to defendants to put forth a legitimate, non-discriminatory reason for her termination.

Defendants have offered ample evidence that they terminated plaintiff for poor performance: plaintiff's Pulse Check and Annual Appraisal review forms documenting her performance deficiencies and showing a lack of improvement over time; testimony and a declaration from Mr. Kleiner, plaintiff's supervisor, detailing his personal observations about plaintiff's skills as well as the reports he gathered from other team members—both through the interviews he conducted while compiling plaintiff's reviews and through emails and other discussions with team members outside of the review process; and a declaration from plaintiff's colleague Laura Geller, a Senior Editor on her team, confirming Ms. Ramsaran's various, well-documented performance deficiencies.

Poor performance is a legitimate, non-discriminatory reason for terminating an employee. *See, e.g., Muhleisen v. Wear Me Apparel LLC*, 644 F. Supp. 2d 375, 384 (S.D.N.Y. 2009) ("[T]o the extent that this argument is predicated on the notion that being pregnant and taking maternity leave provide an immunity bath that protects one from discharge based on poor job performance, it fails."); *Forde v. Beth Israel Med. Ctr.*, 546 F. Supp. 2d 142, 151 (S.D.N.Y. 2008) ("In support of their motion for summary judgment, defendants offer substantial, largely undisputed evidence that Forde's work performance was unsatisfactory."); *Sookdeo-Ruiz v. GCI Grp.*, No. 00-cv-3517 (HB), 2001 WL 121942, at *3 (S.D.N.Y. Feb. 13, 2001) *aff'd,* 31 F. App'x 17 (2d Cir. 2002) ("Assuming plaintiff met her *prima facie* burden, defendant then offered a legitimate reason for her termination, namely that she was an unsatisfactory employee."). And defendants have amply met their burden to produce evidence of plaintiff's poor performance. *See, e.g., Iverson v. Verizon Commc'ns*, No. 08-cv-8873(SAS), 2009 WL 3334796, at *4 (S.D.N.Y. Oct. 13, 2009) ("Verizon has met its evidentiary burden by providing multiple legitimate business reasons for its decision to terminate Iverson, including . . . negative performance reviews."). Plaintiff has contended that some of the evaluations presented by defendants were not complete, and that she received some evaluations of her work performance that were not negative. But, as discussed further below, plaintiff's cherry-picked examples of positive work evaluations do not negate defendants' substantial evidence of Ms. Ramsaran's poor work performance.

### b. Plaintiff's Hearsay Objections

#### i. Pulse Check and Annual Appraisal Documents

Plaintiff argues that the Pulse Check and Annual Appraisal documents are "inadmissible hearsay" and should not be considered as evidence in support of defendants' motion. At the outset, the Court notes that these documents are not the sole documented evidence of plaintiff's poor work performance. Moreover, as defendants point out, the Court may consider these documents at

11

summary judgment because they fall under the hearsay exception for business records, Federal Rule of Evidence 803(6). Under that rule, "[a] record of an act, event, condition, opinion, or diagnosis" is "not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness," if the following conditions are met:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Courts in similar cases have accepted personnel files and employee review documents as business records under Rule 803(6). *See, e.g.*, *Murray v. Town of Stratford*, 996 F. Supp. 2d 90, 105 (D. Conn. 2014) (accepting under 803(6) personnel records authenticated by defendants' Human Resources Director); *Krys v. Ysrael A. Seinuk, P.C.*, No. 09-cv-5161 (HB), 2010 WL 2654632, at *2 n.5 (S.D.N.Y. July 2, 2010) (accepting under 803(6) a "Notice of Wage Adjustment" that noted a salary raise for plaintiff along with a note that plaintiff's work was not "up to par"); *Barney v. Consol. Edison Co. of New York*, No. 99-cv-823 (DGT) (SMG), 2009 WL 6551494, at *14 (E.D.N.Y. Oct. 1, 2009) *aff'd sub nom.* 391 F. App'x 993 (2d Cir. 2010) (accepting under 803(6) an audit report of employee misconduct prepared as part of a routine investigation to determine whether disciplinary action was required). In addition, the Second Circuit has made clear that "Rule 803(6) favors the admission of evidence rather than its exclusion if it has any probative value at all." *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) (quoting *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000)) (internal quotations omitted).

Here, defendants have submitted transcripts of deposition testimony and sworn affidavits from Mr. Kleiner, who created the Pulse Check and Annual Appraisal documents, and Ms. Becker, who is the Senior Manager of Human Resources at Booz.  The record establishes that both Mr. Kleiner and Ms. Becker are qualified to testify regarding whether these documents meet the conditions set forth in Rule 803(6).  *See United States v. Chang An-Lo*, 851 F.2d 547, 557 (2d Cir. 1988) ("[S]omeone who is sufficiently familiar with the business practice must testify that the records were made as part of that practice.") (quoting *United States v. Rosenstein*, 474 F.2d 705, 710 (2d Cir. 1973)).

Mr. Kleiner affirmed that he created the Pulse Check document in September and October 2012 using information he collected about plaintiff's performance during the prior six months.  *See* Kleiner Declaration, Dkt. No. 21-1, at ¶ 25.  He affirmed that he compiled information through interviews of others who had personal knowledge of plaintiff's work and created the Annual Appraisal document, with Ms. Becker's assistance, in January 2013, regarding plaintiff's performance during the prior three months.  *See id.* at ¶¶ 51, 53, 54, 56, 58, 59.  Ms. Becker affirmed that Mr. Kleiner sent her the Pulse Check document that he had prepared for plaintiff on November 28, 2012, when she requested a copy for inclusion in plaintiff's human resources file.  *See* Becker Declaration, Dkt. No. 21-2, at ¶ 18.  Ms. Becker affirmed that Mr. Kleiner interviewed other employees to compile information for plaintiff's Annual Appraisal and that she assisted him in creating the document in Booz's preferred format.  *See id.* at ¶¶ 29-31, 33.  Thus, the record supports the conclusion that both documents were "made at or near the time by—or from information transmitted by—someone with knowledge" as required by Rule 803(6)(A).

Ms. Becker affirmed that both of the records at issue were made in the course of Booz's regular process of evaluating its employees' job performance.  *See* Becker Declaration at ¶¶ 6-8 (Booz conducts Pulse Checks and Annual Appraisals to evaluate employee performance); ¶ 15 (Mr. Kleiner created the Pulse Check record in the process of evaluating plaintiff's performance); ¶ 29

13

(Mr. Kleiner created the Annual Appraisal record in the process of evaluating plaintiff's performance). Thus, the record supports the conclusion that both documents were "kept in the course of a regularly conducted activity of a business" as required by Rule 803(6)(B).

Ms. Becker affirmed that Pulse Check reviews are regularly completed for new employees at Booz and Annual Appraisals are regularly completed for all employees at Booz. *See* Becker Declaration at ¶¶ 6-8. She affirmed that the process for conducting both Pulse Checks and Annual Appraisals includes completing evaluation forms like the records at issue here. *See id.* at ¶¶ 9-10. Mr. Kleiner also affirmed that creating records such as those at issue is a regular part of the Pulse Check and Annual Appraisal process at Booze. *See* Kleiner Declaration at ¶¶ 23-24. These affirmations support the Court's conclusion that the defendants have sufficiently demonstrated that the preparation of records at issue was a "regular practice" of Booz's employee evaluation activities, as required by Rule 803(6)(C).

Finally, plaintiff has provided no evidence from which the Court could conclude that either the source of the information in these records or the method or circumstances of their preparation indicates a lack of trustworthiness under Rule 803(6)(E). Therefore, the Court rejects plaintiff's contentions that the Pulse Check and Annual Appraisal documents are inadmissible hearsay that cannot be considered in support of defendants' motion.

### ii.  Comments from Other Employees

Plaintiff also argues that any comments from plaintiff's colleagues who did not submit sworn affidavits are "inadmissible hearsay" and should not be considered as evidence in support of defendants' motion. This argument also fails. As defendants point out, while comments from plaintiff's colleagues are not admissible for the truth of the matter asserted, without a sworn affidavit, they are admissible to show the effect those comments had on another person—in this case, Mr. Kleiner, plaintiff's supervisor and the person who made the decision to terminate her. *See,*

14

*e.g.*, *Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 606 (S.D.N.Y. 2008) *aff'd,* 355 F. App'x 487 (2d Cir. 2009) ("While the unsworn e-mails are not admissible for their truth, they later were read by Finnerty and thus are appropriately considered with respect to the basis on which he later made the decision to terminate plaintiff."); *Mendez-Nouel v. Gucci Am., Inc.*, No. 10-cv-3388 (PAE), 2012 WL 5451189, at *3 n.5 (S.D.N.Y. Nov. 8, 2012) *aff'd,* 542 F. App'x 12 (2d Cir. 2013); *United States v. Gotti*, 457 F. Supp. 2d 395, 397 (S.D.N.Y. 2006) ("[I]t is well established that statements offered for their effect on the listener are non-hearsay."). As the Second Circuit has held, "if the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) (quoting Fed. R. Evid. 801(c) advisory committee's note).

This is particularly relevant here, where, as discussed in more detail below, the issue is the defendants' motivation in terminating plaintiff, not the adequacy of her performance as an employee. "In a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what '*motivated* the employer,' . . . ; the factual validity of the underlying imputation against the employee is not at issue." *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) (quoting *United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 716 (1983)) (internal quotations and citations omitted).

Therefore, the Court rejects plaintiff's contentions that comments from plaintiff's colleagues are hearsay and thus inadmissible to support defendants' motion, and accepts those comments and statements to show their effect on Mr. Kleiner.

### c. *McDonnell Douglas* Step Three: Plaintiff's Pretext Arguments

Because defendants have met their burden of production, plaintiff must come forward with evidence of discrimination. *See James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000); Section III.b, *supra*. For the reasons stated below, the Court finds that plaintiff has not presented

sufficient evidence to "support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000), *superseded by statute on other grounds* (internal citations and alterations omitted). As a result, defendants are entitled to summary judgment on plaintiff's Title VII claims.

### i. Plaintiff's Disagreement with her Performance Assessments

In her submissions, plaintiff focuses heavily on her disagreement with defendants' assessment of her job performance. She is, in effect, "attacking the *reliability* of the evidence supporting [Booz's] conclusions." *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) (emphasis in original). However, the *reliability* of the evidence is only relevant to the truth of the allegations about plaintiff's poor performance, and in a case like this, the Court is "decidedly not interested in the truth of the allegations against plaintiff." *Id.* Instead, the Court must analyze "what *motivated* the employer." *Id.* (emphasis in original).

Plaintiff cannot create a genuine dispute of material fact by producing evidence that she did some good work, or even that she received some good feedback from her colleagues. Even if there were a genuine dispute about her job performance, it would be immaterial, as it would be relevant only to prove the inaccuracy of defendants' assessment. *See Cameron v. Cmty. Aid For Retarded Children, Inc.*, 335 F.3d 60, 66 (2d Cir. 2003). Even assuming Booz's assessment of plaintiff's job performance *was* inaccurate, "what is significant is that they based their decision to dismiss plaintiff on *that* belief," rather than her gender or pregnancy. *Agugliaro v. Brooks Bros.*, 927 F. Supp. 741, 747 (S.D.N.Y. 1996) (emphasis added).

"Where a plaintiff has been terminated . . . , the question is not whether the employer reached a correct conclusion . . . , but whether the employer made a good-faith business determination." *Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 111 (S.D.N.Y. 2009).

16

"And while it is possible to dispute whether various pieces of evidence about Plaintiff's performance . . . really justified [her termination], to do so would require a court to 'sit as a super-personnel department' to reexamine whether an employee's performance was really deficient, something that . . . courts should not do." *Ghent v. Moore*, 324 F. App'x 55, 57 (2d Cir. 2009) (citing *Stern v. Trustees of Columbia Univ. in City of New York,* 131 F.3d 305, 315 (2d Cir. 1997) (Calabresi, J., dissenting)). Here, too, the Court declines to sit as a super-personnel department and evaluate whether plaintiff's performance was really deficient. It is well documented that defendants believed that it was.

### ii. Temporal Proximity

Plaintiff, despite noting her agreement with defendants that she cannot demonstrate pretext on the basis of temporal proximity alone, attempts to do just that. She cites to *Smith v. K & F Indus., Inc.*, 190 F. Supp. 2d 643 (S.D.N.Y. 2002) for the proposition that "temporal proximity of termination and announcement of pregnancy can raise an inference of discrimination." Plaintiff's Memorandum of Law ("Plaintiff's Memo"), Dkt. No. 28, at p. 25. However, as other courts have pointed out, "[i]n *Smith,* it was not simply the temporal proximity that required a denial of summary judgment, but also numerous pregnancy-related comments made by the employer combined with the lack of credibility of the employer's proffered non-discriminatory reason for termination." *Baffa v. STAT Health Immediate Med. Care, P.C.*, No. 11-cv-4709 (JFB) (GRB), 2013 WL 5234231, at *9 (E.D.N.Y. Sept. 17, 2013) (citing *Smith*, 190 F. Supp. 2d at 648-51).

In support of her temporal proximity argument, plaintiff points to the fact that Mr. Kleiner did not tell Ms. Becker in Human Resources that he had made a firm decision to terminate plaintiff until January 23, 2013. She also points to a January 18, 2013 email exchange between another team member and Ms. Becker regarding the budget for hiring contractors while team members were on maternity leave. *See* Maternity Leave Questions Emails, Dkt. No. 29-10, at p. 11-12. In her

response to the team member, Ms. Becker reported that plaintiff was out on paid disability leave, not unpaid leave, as the team member had apparently been told. *See id.* However it appears plaintiff overstates the significance of this email exchange, because as Ms. Becker noted in her deposition, plaintiff's salary was covered by CIGNA, Booz's insurance carrier. *See* Becker Deposition, Dkt. No. 21-3, at p. 68-69.

Plaintiff also claims that defendants backdated her Annual Appraisal to January 7, 2013, saying in her brief: "Plaintiff strongly suggests the reason why defendants back dated this appraisal was because January 7, 2013 was a date before the plaintiff informed the defendants she needed to be on bed rest and take pregnancy disability leave." Plaintiff's Memo at p. 21. Plaintiff offers no evidence that the review was actually backdated, nor does she offer any evidence of defendants' alleged motivation for doing so. She also fails to address why, if the review had been backdated, defendants offered other evidence that Mr. Kleiner's review of plaintiff's performance continued later into January.

Unlike in *Smith*, plaintiff has put forth no additional evidence of discrimination and she has not credibly attacked defendants' legitimate non-discriminatory reasons for her termination. "While timing may be sufficient to establish an inference of discrimination" at the first, *prima facie* stage of *McDonnell Douglas*, "the close proximity of a termination to the plaintiff's announcement of her pregnancy alone is insufficient to demonstrate a pretext." *Forde v. Beth Israel Med. Ctr.*, 546 F. Supp. 2d 142, 152 (S.D.N.Y. 2008) (quoting *Kennebrew v. New York City Hous. Authority*, No. 01 CIV 1654 (JSR)(AJP), 2002 WL 265120, at *16 (S.D.N.Y. Feb. 26, 2002)); *see also Baffa*, 2013 WL 5234231, at *9, *11; *Iverson v. Verizon Commc'ns*, No. 08 Civ. 8873 (SAS), 2009 WL 3334796, at *5 (S.D.N.Y. Oct. 13, 2009) ("Merely claiming temporal proximity between the disclosure of disability and termination, however, is not enough to show that Verizon's reasons for termination were a pretext for discrimination."). Neither the temporal proximity of plaintiff's announcement of her pregnancy to

her termination, nor the temporal proximity of plaintiff's pregnancy-related disability leave to her termination, are sufficient on their own to support a finding of pretext.

Plaintiff asserts repeatedly in her Rule 56.1 statement that she "felt discriminated against" when she was terminated. *See, e.g.*, SUF at ¶¶ 67, 74, and 76. In the absence of any other evidence of the defendants' discriminatory intent, however, Ms. Ramsaran's feelings about her discharge are not sufficient for plaintiff to meet her burden to come forward with evidence of discrimination. If a bare affirmation that a plaintiff "felt discriminated against" was sufficient to defeat summary judgment, summary judgment in employment discrimination cases would be rare.

Plaintiff has failed to bring forth evidence from which a reasonable jury could determine that it is "more likely than not the employer's decision was motivated, at least in part, by a discriminatory reason." *Forde*, 546 F. Supp. 2d at 150. Because plaintiff cannot "point to evidence that reasonably supports a finding of prohibited discrimination," *see James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000), defendants' motion for summary judgment on her Title VII claims is GRANTED.

### d. Plaintiff's State and City Law Claims

Under 28 U.S.C. § 1367(c)(3), the exercise of supplemental jurisdiction over plaintiff's claims under New York state and city laws is within the Court's discretion if it has "dismissed all claims over which it has original jurisdiction." The Second Circuit counsels *against* exercising supplemental jurisdiction in such a situation: "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) (quoting *Castellano v. Bd. of Trustees,* 937 F.2d 752, 758 (2d Cir. 1991)).

Having dismissed all of plaintiff's claims that were based on a federal question under 28 U.S.C. § 1331, and there being no other basis for federal jurisdiction over this case, the Court

declines to exercise its supplemental jurisdiction over plaintiff's claims under New York state and city laws.  *See* 28 U.S.C. § 1367(c)(3).

## IV.  CONCLUSION

For reasons outlined above, defendants' motion for summary judgment is GRANTED. Plaintiff's remaining claims are dismissed.  The Clerk of Court is directed to terminate the motion pending at Dkt. No. 20 and to close this case.

SO ORDERED.

Dated:  August 23, 2015
 New York, New York

_____
GREGORY H. WOODS
United States District Judge